[Civ. No. 2802.   Third Appellate District.—April 17, 1925.]

# HUGH Y. DAVIS et al., Respondents, v. L. BOSCOU, Appellant.

[1] SERVICES—ARCHITECTS—CONTRACTS—FINDINGS — EVIDENCE — APPEAL.—In an action to recover from the defendant the reasonable value of services rendered by plaintiffs for defendant, at his instance and request as architects, in preparing plans and specifications for two buildings, one a one-story building and the other a three-story building, a finding of the trial court in favor of the plaintiffs that there had been no agreement not to charge for the one-story building, based upon conflicting evidence, is binding upon appeal.

[2] ID.—PREVENTION FROM PERFORMANCE—QUANTUM MERUIT — FINDINGS—EVIDENCE.—In such action, the findings of the trial court to the effect that plaintiffs, after being advised that the plans and specifications for the three-story building did not comply with certain provisions of the State Housing Act, were engaged, at the request of defendant, in correcting and amending the plans and specifications, so as to comply with the law, and while so engaged, were discharged by the defendant, and that the building, as designed by the plaintiffs, with the changes directed by defendant, would have rendered it suitable for use as a hotel, and could have been legally constructed under the building laws of the state and city ordinances, and could have been leased, are supported by the evidence.

[3] ID.—QUANTUM MERUIT — EVIDENCE. — In such action, where the amount awarded plaintiffs as the reasonable value of their services is below the amount which the admissible testimony would have justified the court in finding, the defendant has not been injured by the trial court accepting, if it did accept as a basis of calculation, figures that awarded the plaintiffs a smaller compensation than their testimony would have justified.

(1) 4 **C. J.**, p. 883, n. 33.    (2) 40 **Cyc.**, p. 2849, n. 24.    (3) 4 **C. J.**, p. 922, n. 75.

APPEAL from a judgment of the Superior Court of San Joaquin County.  George F. Buck, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Daniel V. Marceau for Appellant.

M. P. Shaughnessy and Warren H. Atherton for Respondents.

PLUMMER, J.—Action by plaintiffs to recover from the defendant the reasonable value of services rendered by plaintiffs for defendant, at his instance and request as architects, in preparing plans and specifications for two buildings, one a one-story building and the other a three-story building. Plaintiffs had judgment for the sum of $1,950.  From this judgment the defendant appeals.

It appears from the transcript that the defendant, the owner of a lot of land situate at one of the corners of Channel and California Streets, in the city of Stockton, applied to the plaintiffs for the preparation of plans for the construction of a one-story building, and after the plans and specifications for the one-story building had been completed, the defendant, conceiving the idea that the erection of a three-story building would produce a greater revenue, directed the plaintiffs to prepare plans and specifications for a three-story building, the lower story to be used for store purposes, and the two upper floors to be used as a hotel and that, in pursuance of such directions, the plaintiffs entered upon the preparation of plans for a three-story building.  It further appears that no specific directions were ever given by the defendant to the plaintiffs as to the kind and character of building which he desired to erect.  The only di-

rections, so far as the transcript shows, appear that the defendant desired the erection of a building which could be leased so as to yield him a return of seven or eight per cent on the investment. The plaintiffs proceeded with the preparation of plans for a three-story building, the lower portion to be used for store purposes, and the upper floors to be used for hotel purposes, and thereafter delivered to the defendant plans and specifications for such a building. In the course of defendant's efforts to find a tenant for the proposed building, it was pointed out to the defendant by some of the persons contemplating the taking of a lease thereon, that the contemplated buildings, in some particulars, violated the provisions of the State Housing Act, or the act to regulate the building and occupancy of hotels then in full force and effect, and would also violate certain ordinances of the city of Stockton. These defects were called to the attention of the plaintiffs and certain tentative plans and drawings were again made by them for the purpose of obviating the objections so raised. In the course of the attempted leasing of the proposed building it was pointed out, among other things, that the rooms were too small to admit of being let for occupancy by two persons under the State Housing Act, as it then existed, and that changes and alterations would have to be made therein, in order to give sufficient cubic air space for the different rooms, to provide additional windows for the hallways, and certain other defects which were discovered. It appears from the transcript that the defendant and the persons with whom he was negotiating went to the offices of the plaintiff and stated that they wanted larger rooms, that the rooms as designed were for one person instead of two, and asked how long it would take to make the changes, and were informed that it would take approximately three days. The testimony of one of the witnesses is that he prepared the necessary sketches and that the defendant promised to come back the same day, but that the defendant never returned. Thereafter, on the twenty-second day of May, 1923, the defendant wrote to the plaintiffs the following letter:

"I am returning, under separate cover, blue prints and specifications prepared by you for a store and hotel building. My reason for the return is that the building designed by you is not suitable for use as a hotel, by reason of the

fact that the rooms, as laid out by you, are too small. That under the State Housing Act [Stats. 1923, p. 781], two persons cannot occupy any room in the proposed building. There are certain other provisions in the plans and specifications which are likewise objectionable. For the reasons above noted, the building, as designed by you, cannot be used for the purpose designed by me.

"Inasmuch as these plans have required over two months for preparation, it will be impossible for me to wait until new ones are prepared as an entirely new design of the building must be made." (Signed by the defendant.)

Following the receipt of this letter, the plaintiffs instituted this action to recover the reasonable value of the services performed in drawing the plans and specifications for the two buildings herein referred to. The pleadings in this action show that the stipulated price to be paid for the services was the sum of three per cent of the estimated cost of the buildings. There is a conflict in the testimony as to whether the plaintiffs had waived any right to compensation for services performed in drawing the plans and specifications for the one-story building, in consideration of being employed to draw plans and specifications for the three-story building. [1] The finding of the court in favor of the plaintiffs that there had been no agreement not to charge for the one-story building, based upon such conflicting evidence, is binding upon appeal.

[2] As his principal ground for reversal herein the defendant argues that the plans and specifications as drawn provided for a building that could not be erected under the State Housing Act as it then existed, and in support of his contention relies principally upon the case of *Nave* v. *McGrane,* 19 Idaho, 111 [113 Pac. 82], and *Bebb* v. *Jordan,* 111 Wash. 73 [9 A. L. R. 1035, 189 Pac. 553]. The McGrane case states the law in relation to architects and their qualifications as follows: "So far as an architect is concerned, there is always an implied contract that the work shall be suitable and capable of being used for the purpose for which it is prepared. Apart from questions of public policy, this principle would prevent him from recovering upon plans and specifications prepared in violation of law, unless he was directed to so prepare them by the owner." The same rule is announced in the Bebb case, *supra.* There

is practically no conflict in the cases having to do with this subject, in holding that an architect is not entitled to recover compensation for plans and specifications drawn by him for a building which cannot be erected upon a specified lot, by reason of the provisions of building laws or ordinances, unless the architect is specially employed to prepare plans and specifications for such a building, irrespective of the place where it is to be erected. If the architect knows where the building is to be erected, and is employed generally to draw plans and specifications therefor, the plans and specifications so drawn by him must provide for a building that can be legally erected, and reasonably suitable for the uses and purposes for which it is to be erected.

On the part of the plaintiffs the reply is made that the plans and specifications under consideration have not been finally completed, that the defendant discharged the plaintiffs while they were engaged in preparing plans and specifications for the contemplated building. The testimony upon this question is conflicting, and the finding of the trial court is to the effect that the plaintiffs were discharged while they were so engaged. It is true that to make the plans and specifications conform to the requirements of the law as it existed at the time of the preparation of the plans in controversy would necessitate providing for larger rooms, which necessarily limited the number of rooms for the two stories of the building to be used for hotel purposes. There is nothing in the transcript which shows whether the rental value of the building would be lessened by reason of providing rooms capable of being occupied by two persons, rather than providing rooms that could be occupied by only one person, nor is there anything in the transcript from which the trial court could infer that the building could not be leased when the plans had been changed to conform with the state laws and building ordinances of the city of Stockton. There is testimony to the effect that three persons interviewed by the defendant declined to take a lease upon the premises, and there is testimony to the effect that, in the opinion of certain witnesses, the premises could be leased. The finding of the court is that the premises could be leased. The testimony shows that the defendant desired a building that would yield him the highest rate of interest on the investment, but there is no evidence that the plaintiffs made any

representations whatever that a building could be erected on the premises that would yield a return of seven or eight per cent per annum on the investment. The plans and specifications having been returned, as above stated, and the plaintiffs still being engaged in the correction of the same and in the rearrangement of the rooms to make them comply with the laws and ordinances relating thereto, and the court having so found, the respondent relies upon the case of *Bebb* v. *Jordan, supra,* cited by the appellants. In that case it appears that the architects were employed to draw plans and specifications for the erection of two buildings. The plans and specifications, as contemplated for the erection of one building, were completed and were in violation of the building laws of the state. It was held by the court that no compensation could be recovered for the drawing of such plans and specifications. The plans and specifications for the other building were not completed and the services of the architect were dispensed with before such plans and specifications had been finished. The court stated the law applicable thereto, as follows: ''As to the services performed on the plans for the six-story building, we think the plaintiffs are entitled to recover their reasonable value. The defendant employed the plaintiffs to prepare them, and stopped the work thereon before they were completed. By these acts, unless a sufficient reason intervened, he obligated himself to pay such sum as the services performed thereon were reasonably worth. The defendant seeks to escape liability by showing that the plans as far as they had been prepared contemplated a building which could not be constructed within the limit of cost agreed upon, and showed, as do the plans for the building of eight stories, a violation of the city ordinances. As to the first of these objections the evidence was contradictory, and to our minds supports the one theory as well as the other. But we think the true answer is that the plans were incomplete when the defendant stopped work upon them, and that he cannot now be heard to say that when completed they would have violated the contract as to cost, or the city ordinances, or would have been otherwise defective. These are matters that cannot now be certainly known, and the reason they are in this uncertain condition is because of the defendant's acts, not because of the acts of the plaintiffs.'' Judgment was awarded

for the reasonable value of the services performed in preparing plans and specifications for the six-story building. There, as here, the question depends upon conflicting evidence, not as to the probable cost of the building, but as to the rentable value of the building and whether the building could be leased. The trial court found that the building could have been leased, and that the building, as designed by the plaintiffs, with the changes directed by the defendant, would have rendered it suitable for use as a hotel, and that such a building could have been legally constructed under the building laws of the state of California and the ordinances of the city of Stockton, and that at the time of the termination of the plaintiffs' employment they were engaged in making the necessary changes.

The testimony was to the effect that the cost of erecting a building contemplated by the plans and specifications for a one-story structure would approximate the sum of $25,000 and that the cost of erecting a three-story building would approximate the sum of $65,000. The witnesses for the plaintiffs testified that the reasonable value of the plaintiffs' services was three-fifths of six per cent of the estimated cost. The pleadings show that the compensation agreed upon for the contemplated plans was the sum of three per cent of the cost of the building. Upon this calculation the amount of compensation earned upon the contemplated plans for a one-story building would be the sum of $750, leaving $1,200 allowed by the court as reasonable compensation for the services performed in preparing the plans and specifications for the three-story building. In fixing the reasonable value of services, the testimony was all based upon completed plans, but there was some testimony as to the reasonable value or cost of changing the plans so as to make them conform to the building laws and ordinances. This testimony was to the effect that the cost of making such changes would approximate the sum of $180. Making such deduction, the finding of the court that the reasonable value of the services performed by the plaintiffs for the defendant amounted to the sum of $1,950 is considerably less than the sum that would have been supported by the evidence, had the court found for such greater sum. [3] In this particular the defendant cites as error the admission of the testimony of the witness Davis that the cost of the one-story building, with

walls for a three-story building, would approximate the sum of $45,000, and that the court must have taken such testimony as the basis for its calculations in fixing the amount to which it found the plaintiffs reasonably entitled. There is nothing in the transcript which shows that applicability of testimony as to the cost of such a building, and there is nothing in the record which distinctly shows how the court arrived at the figure of $1,950, but as the amount is below that which the admissible testimony would have justified the court in finding, the defendant has not been injured by the court accepting, if it did accept as a basis of calculation figures that awarded the plaintiffs a smaller compensation than their testimony would have justified, assuming that the trial court believed the testimony to which we have referred.

The evidence set forth in the transcript shows that the plans and specifications at the time the defendant wrote the letter, which we have herein set forth, failed to comply with the building laws of the state and ordinances of the city of Stockton in the particulars pointed out by the defendant, but the finding of the trial court, sustained by the evidence, that the plaintiffs were engaged in correcting and amending the same at the time of their discharge, makes directly applicable the ruling of the Bebb case, *supra*, and relieves us from the necessity of considering the various instances in which the plans and specifications are said to be violative of the law of the state.

So far as the record shows, it does not appear that the defendant ever gave any specific directions as to the exact kind of building he desired to erect. It appears generally that he wanted a building with a maximum number of rooms, and a building that would yield a certain percentage on the investment. Further than that, it would seem that the arrangement of the building and all the details as to the plans and specifications were left to the plaintiffs. The trial court found that the work performed by the plaintiffs was, as far as the same had been completed, skillfully and properly performed, and it could not be said, as a matter of law, that the plans and specifications when finally completed would not have complied with the law. This obviated any necessity for the trial court making a number of the negative findings in relation to the plans and specifications presented by the defendants. It is strongly insisted that there

is no testimony supporting the finding of the court that the plaintiffs, at the request of the defendant, were making alterations in the plans to conform to the state building laws. The testimony does show that the plaintiffs stated they would proceed with the work of making the change, or changes, necessary, and that the defendant promised to come back the next day to see the amended plans, but that he never returned, from which the court would be entitled to draw the inference that the plaintiffs were proceeding to correct the plans to make them conform to the legal requirements. While the trial court, upon the testimony introduced, might have come to a different conclusion, we think that there is sufficient testimony to support the findings, as made, and that the judgment of the trial court should be affirmed. It is so ordered.

McDaniel, J., *pro tem.*, and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 16, 1925, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 15, 1925.